IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 21, 2021

FILED
03/12/2021
Clerk of the
Appellate Courts

## STATE OF TENNESSEE v. CONNER WAID HOLCOMB

**Appeal from the Criminal Court for Knox County
No. 114451    Steven W. Sword, Judge**

_____

### No. E2020-00332-CCA-R3-CD

_____

The Defendant, Conner Waid Holcomb, pleaded guilty in the Knox County Criminal Court to statutory rape, a Class E felony. *See* T.C.A. § 39-13-506 (2018). Pursuant to a negotiated plea agreement, the Defendant received a two-year sentence, and the trial court granted the Defendant's request for judicial diversion. On appeal, the Defendant contends that the court abused its discretion by placing him on the sexual offender registry during the diversionary period. We dismiss the appeal.

### Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Marcos M. Garza (on appeal), Timothy Baldridge (on appeal), and Daniel B. Morrell (on appeal, at sentencing hearing, and at guilty plea hearing), Knoxville, Tennessee, for the appellant, Conner Waid Holcomb.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Charme P. Allen, District Attorney General; Sarah Keith, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

According to the State's recitation of facts at the guilty plea hearing:

[I]f this case went to trial the state would call the witnesses listed on the presentment who would testify that on April 18, 2018, officers, detectives with the Knox County Sheriff's Office were dispatched . . . in response to a report of a sexual assault.

The victim . . . date of birth 10/6/03, making him 14 years old at the time, reported that he had met a stranger through social media app Grindr and continued communicating with him via Snapchat. The suspect was identified as Conner Holcomb. Date of birth 2/21/97, making him 21 years old at the time.

The previous evening the defendant had come to the victim's home and kissed him through a window. The victim invited the defendant back to his house on the 18th. The defendant and the victim talked and kissed. The victim asked the defendant if he wanted to. The defendant said, "Aren't you a little young?" The victim replied, "Am I?" The defendant said, "Fair point."

The two then took their clothes off, went to the couch, and engaged in oral and anal intercourse. Defendant left shortly thereafter claiming he had to leave for a job interview. Victim reported the defendant was aware of his age. After this encounter, he did call family members and reported it to them immediately afterward, and then they assisted him in calling the police and reporting this to law enforcement.

Law enforcement identified the defendant through Snapchat and through photo lineup. He agreed to do an interview. He admitted that he and the victim engaged in sexual intercourse. He claimed he didn't know how old the victim was and didn't ask. However, he conceded that the victim did look very young.

Pursuant to a plea agreement, the Defendant pleaded guilty to statutory rape with an agreed-upon two-year sentence, with the understanding that the Defendant would seek judicial diversion. The prosecutor conceded that the Defendant qualified for probation and diversion and said that she would not oppose granting diversion. However, the State sought to require the Defendant to register as a sexual offender during the diversionary period.

The victim's father read his victim impact statement into the record. The victim's father discussed the emotional impact on the victim, along with the "financial burdens" suffered by the family due to the victim's medical and mental health treatment. The victim's father opposed placing the Defendant on judicial diversion and requested that the Defendant serve at least six months in jail and be placed on the sexual offender registry. The trial court explained to the victim's father that the State would agree to placing the Defendant on diversion, as long as the Defendant qualified, and that the only issue at the sentencing hearing was whether to place the Defendant on the sexual offender registry during the diversionary period. The victim's father understood and said he did not want the victim to testify at a trial.

The psychosexual risk assessment report reflects that the Defendant acknowledged committing the "sexual offensive behavior" but denied knowing the victim's age at the time the Defendant initially met the victim. The report reflects, though, that the Defendant knew the victim was a minor before the incident occurred. The evaluator determined that the Defendant's credibility was "fair." The report reflects that the Defendant did not have an intellectual impairment and did not suffer from mental illness, although the Defendant reported stress and anxiety as a result of the present case.

The Defendant told the evaluator that he met the victim through Grindr, which the Defendant had used for a couple of months. The Defendant reported that in order to join Grindr, a user must be at least age eighteen. He reported that the victim sent him a message through Grindr, that they exchanged text messages for a couple of days, and that they agreed to meet. The Defendant said that the victim provided the victim's address, that they met at the victim's home "late at night," that they talked "at the victim's window and hugged," and that the Defendant agreed to return the next day and left. The Defendant reported that he left because he felt uncomfortable. The Defendant reported that he did not know the victim was a minor but acknowledged the victim looked young. The Defendant stated that he returned to the home the next day and that they engaged in consensual sexual activity. The Defendant stated that afterward, he left the victim's home and did not intend to see the victim again. The Defendant said that although the victim continued to contact the Defendant and wanted to "get together again," the Defendant "blocked" the victim's text messages.

The psychosexual report reflects that the Defendant lived with his mother with the intention to move out after saving enough money. The Defendant reported having good physical and mental health. The Defendant reported employment as a restaurant server and described himself as a social drinker. He denied having problems with drugs and alcohol and admitted smoking marijuana one week before the evaluation to help with his anxiety. The Defendant reported having a "nice" childhood and obtaining his GED in 2019.

The psychosexual report reflects that the Defendant had a "low-moderate level of risk to reoffend" but noted that the Defendant's responses were associated with abnormal fixations of males of all ages. However, the report reflects that, based upon his age, the Defendant's sexual interest to adolescent males and females was not deviant sexual behavior but rather a deficit of interpersonal social skills. Likewise, the report reflects that the Defendant had a high level of "sexual pre-occupation/sexual interest." The evaluator concluded that the Defendant had a moderate level of risk associated with deviant behavior, that his strongest sexualized interest was adult males, which was characterized as above normal, and that his above normal interest in young females indicated he "experiences nondiscriminatory sexual interest." The report reflects that the Defendant "endorsed"

-3-

healthy adult consensual sexual activity, which was associated with a low level risk to reoffend.

The psychosexual report reflects that the Defendant accepted responsibility for his conduct, that he "shared some responsibility with the victim," and that the Defendant had a "positive prognosis for treatment." The report reflects that the Defendant expressed empathy for the victim and that the Defendant believed the victim may have felt "used" when the Defendant blocked the victim from communicating with him. The evaluator concluded that the Defendant represented a "regressed child sex offender, situational type," who struggled with intimacy and was unable to feel secure in peer relationships. The report reflects that this type of offender was "attracted to the vulnerability of the victim, which provide[d] . . . power and control they cannot achieve in healthy relationships." The report reflects that this type of offender had a low to moderate frequency of sexual misconduct, was likely to take advantage of situations which provided access to victims, "develop[ed] pre-offending" relationships with victims, and engaged in grooming before "acting out." The report reflects that regressed situational sexual offenders were "not typically, predatory in obtaining victims."

The psychosexual report reflects that the Defendant believed he was communicating with an adult male, that he did not have a criminal history, that he did not abuse alcohol and controlled substances, and that he did not appear to be violent, aggressive, and predatory. The report reflects that the Defendant was a good candidate for "specialized outpatient treatment" to address his abnormally high sexual preoccupation to adult and minor males.

The trial court found that the circumstances of the offense weighed against granting judicial diversion. The court found that the Defendant went to the victim's home but acknowledged the victim invited the Defendant. The court found that although the victim initiated contact, the Defendant "pursued it in a way that it appeared that he . . . knew what he was doing was wrong." The court found the victim was not a consenting adult who allowed the Defendant inside the home. The court determined that the Defendant's having no criminal history, good social history, and good physical health weighed in favor of granting diversion. The court found that because there had not been any pretrial media coverage, the deterrent value to others was not meaningful.

Relative to whether the interests of justice would be served by placing the Defendant on judicial diversion, the court stated that although the circumstances of the offense weighed against diversion, "nobody's really opposing it." The court granted the Defendant's request for diversion. The court found that although the "presentence investigation says [the Defendant was] not a danger to be a predator, I think these were predatory behaviors he had [in] the way he entered the home and this, obviously, disturbed young man, engaged in sexual behavior with him." The court determined that it was

-4-

"warranted" to place the Defendant on the sexual offender registry in order "to protect the public and other people [from] this sort of behavior, it's important that he" be placed on the registry. The court noted that upon the Defendant's successful completion of diversion, the Defendant could petition to be removed from the registry. This appeal followed.

The Defendant contends that the trial court abused its discretion by ordering him to be placed on the sexual offender registry during the diversionary period. The Defendant argues that the court failed to articulate its reasoning for placing the Defendant on the registry, erroneously found that the Defendant displayed sexually predatory behavior in contravention of the psychosexual report, and erroneously determined that the victim "was suffering from emotional and mental problems when it claimed [the victim] was a disturbed young man." The Defendant likewise argues that the court abused its discretion by stating at the guilty plea hearing that the Defendant would be placed on the registry. The State responds that the appeal should be dismissed because this court lacks jurisdiction and, alternatively, that the court did not abuse its discretion by ordering the Defendant to be placed on the registry.

The Tennessee Rules of Appellate Procedure require this court to determine whether this court has jurisdiction to consider an appeal. *See* T.R.A.P. 13(b). In all criminal cases, a defendant is entitled to an appeal as of right "from *any judgment of conviction* entered by a trial court from which an appeal lies to the . . . Court of Criminal Appeals." T.R.A.P 3(b) (emphasis added). However, in the present case, the Defendant received judicial diversion, resulting in the deferment of the entry of a judgment of conviction. *See* T.C.A. § 40-35-313(a)(1)(A) (2019). As a result, the trial court, with the Defendant's consent, deferred further proceedings and placed the Defendant on probation without entering a judgment of conviction. *See id*. Because a judgment of conviction is not entered when a defendant receives diversion, a final resolution of the case does not occur until either a defendant successfully completes probation during the diversionary period or a defendant violates a condition of probation. *Id*. at (a)(2); *see State v. Norris*, 47 S.W.3d 457, 461-63 (Tenn. Crim. App. 2000) (concluding that a defendant does not have an appeal as of right pursuant to Tennessee Rule of Appellate Procedure 3(b) when a defendant has been granted judicial diversion); *see also State v. Katarina R. Long*, No. M2015-01057-CCA-R3-CD, 2016 WL 385164 (Tenn. Crim. App. Feb. 2, 2016) (concluding that a defendant is not entitled to an appeal as of right pursuant to Rule 3(b) when a defendant receives judicial diversion but seeks to appeal a trial court's restitution order); *State v. Bethany Lorraine Kuykendall*, No. E2011-01350-CCA-R3-CD, 2012 WL 3986318 (Tenn. Crim. App. Sept. 12, 2012) (concluding that the defendant was not entitled to an appeal as of right when a defendant receives judicial diversion but seeks to appeal a trial court's restitution order); *State v. Vick R. Nichols, Jr.*, No. M2003-02001-CCA-R3-CD, 2005 WL 292435 (Tenn. Crim. App. Feb. 4, 2005) (concluding that without the entry of a judgment of conviction, a defendant who receives judicial diversion does not have an appeal as of right pursuant to Tennessee Rule of Appellate Procedure 3(b)). As a result, we conclude that the Defendant is not entitled

to an appeal as of right pursuant to Tennessee Rule of Appellate Procedure 3 because a judgment of conviction has not been entered by the trial court.

However, this court may treat an improperly filed appeal pursuant to Tennessee Rule of Appellate Procedure 3 as an extraordinary appeal pursuant to Tennessee Rule of Appellate Procedure 10. *See Norris*, 47 S.W.3d at 463; *State v. Leath*, 977 S.W.2d 132, 135 (Tenn. Crim. App. 1998). Rule 10 states,

> An extraordinary appeal may be sought on application and in the discretion of the appellate court . . . if the lower court has so far departed from the accepted and usual course of judicial proceedings as to require immediate review or . . . if necessary for complete determination of the action on appeal.

T.R.A.P. 10(a). Our supreme court has determined that in order to grant an extraordinary appeal, the appealing party has the burden of showing that "the ruling of the court below represents a fundamental illegality," "the ruling is tantamount to the denial of either party of a day in court," "the action of the trial judge was without legal authority," "the action of the trial judge constituted a plain and palpable abuse of discretion," or "either party had lost a right or interest that may never be recaptured." *State v. Willoughby*, 594 S.W.2d 388, 392 (Tenn. 1980).

We conclude that the Defendant has not presented compelling grounds for relief pursuant to Tennessee Rule of Appellate Procedure 10. The allegation before this court is that the trial court erred in the exercise of its authority. The Defendant has not alleged that the court acted without authority. *See State v. Walter Townsend*, No. W2015-02415-CCA-R3-CD, 2017 WL 1380002 (Tenn. Crim. App. Apr. 13, 2017) (noting a conflict between judicial diversion in which the entry of a judgment of conviction is deferred and the sexual offender registry statute's defining a conviction to include a guilty plea resulting in judicial diversion). The Defendant has not challenged the court's authority to place the Defendant on the registry but, rather, that the court should not have placed the Defendant on the registry based upon the facts and circumstances in this case. Likewise, the Defendant has failed to show that court's decision to place the Defendant on the registry constituted a fundamental illegality or a plain and palpable abuse of discretion.

Because we have concluded that the Defendant does not have an appeal as of right pursuant to Tennessee Rule of Appellate Procedure 3 and because we have concluded that the Defendant has failed to satisfy any of the requirements for extraordinary relief pursuant to Tennessee Rule of Appellate Procedure 10, we dismiss the appeal pursuant to Tennessee Rule of Appellate Procedure Rule 3.

In consideration of the foregoing and the record as a whole, the appeal is dismissed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE